please be seated. Madam Clerk, please call the case. Good morning, Your Honors. Eric check on behalf of Lucy McDermott, especially as the Administrator of the Estate of Kenneth McDermott. Counsel, may it please the Court. Lucy McDermott, Your Honors, was denied a fair trial in this case when defendants were permitted to make Ken McDermott's contributory negligence and issue a trial, actually the centerpiece of their defense, without being required to timely plead and sufficiently prove that Mr. McDermott's conduct was not only negligent, but also that his negligent conduct was approximate cause of his death as required by law. Despite defendants repeated assurances and reassurances to the trial court over several months that contributory negligence was not an issue in the case, it wasn't going to be an issue in the case, and that they were not filing and had no intention of filing their affirmative defense. The trial court allowed them to do so after the start of the trial. You know, can I ask, why don't we have a record in this case? Well, there is a record, Your Honor. Well, why don't we have a report of proceedings? There was a report of proceedings, there was a, it was discussed throughout the post-trial motions. Frankly, I don't think it was an issue in the case. It was discussed during post-trial. But you agree, we don't have the full report of proceedings. We have a portion of the report of proceedings. We have the statement of facts, which was uncontested by the defendants. It was discussed throughout the post-trial motion. We do not have some of the specific testimony. I acknowledge that. And as I mentioned in my reply, if that was really an issue, which I don't think defendants really are going to make an issue, that this evidence of contributory negligence was not made an issue throughout the trial, I do not think they're going to do that. I mean, they're not admitting it, but they're not denying it. And I think under the law, they have an affirmative duty to say, no, that didn't come up throughout the trial. It wasn't discussed. It was never presented to the jury. I had made a motion to the extent that the report was incomplete or the court wanted to see a specific testimony of a specific witness. But this was never an issue in the trial. This was discussed and debated throughout several days of motions to eliminate. It was then presented as part of argument and openings. It was made part of all the witnesses' testimony. It was made part of closings discussed during jury instructions and discussed during the closing and post-trial. To that extent, the plaintiff in this case prepared her case in reliance of defendant's pleadings, the repeated representations that contributory negligence was not an issue, and the court's granting motion eliminating number five barring contributory negligence. That was done on May 25th. After the start of trial, and while literally I was picking a jury, the defendants then say, you know what, Judge, we now want to go ahead and file this affirmative defense. So again, for all of us who've tried cases, you've prepared your entire case based on several years of no contributory negligence ever being pled. The court's already made rulings of no contributories coming in, and now the court is going to allow them to file literally as we're picking the jury. After the start of trial, the trial, if the court may recall, the trial actually began in May of 2012. There was a couple of days of motions to eliminate. It was adjourned due to an injury to defense counsel, and then it resumed on September 5th. So the case was filed in July 2008. The law requires that the move-in give a good reason for why this affirmative defense contributory negligence was not pled earlier. They never actually made a factual finding. I think the quote was, frankly, I think this should have been done long ago. And the discretion is allowed where the defendants can show that there was a good reason why they didn't do it earlier. They never offered. They knew about the missing pill evidence arguably as early as 2009 when they received the toxicology results. Certainly by September of 2011 when their 213 expert, Dr. Kaufman, gave the opinions that Mr. McDermott was a drug abuser and that he must have died from an overdose. The court predicated the allowing of the amendment, as the court will recall, based on a commitment, a commitment from defense counsel that they call their expert because, as the court noted in the colloquy with defense counsel, and defense counsel actually interrupted the court, said, Mr. Reddin, I need a commitment from you that you're going to call Dr. Kaufman. Otherwise, I'm going to grant plaintiff's motion to strike this affirmative defense. And at first, Mr. Reddin said, well, I want to reserve it. And the judge said, no, no, no. I need a commitment because otherwise, Mr. Reddin interrupted and said, I know, judge. I don't want a mistrial. And the judge said, followed it with, that's right, because then I'm going to have to be forced to unring the bell with all of this evidence. So if you're not calling, no, no, no, we'll call him. So now I've prepared my case a certain way. Now I have to go in and shift complete theories, literally, as I'm picking a jury. And actually, the formal pleading wasn't filed until after the jury was picked. Now I have to go back, prepare my opening, all of my witnesses. OK, contributory negligence is in play here. I have two choices. I can ignore it, as if it never happened, and object when it's brought up. Or, as I think all plaintiffs' attorneys would do, you confront the contributory negligences, which I did with my witnesses in my opening, my arguments, and said, ladies and gentlemen, it's a red herring. You're going to hear about contributory negligence, but no witness is going to put, expert witness, is going to put this prejudicial, highly prejudicial evidence into, or is going to connect this missing pill evidence to the death. And I made it, and I dealt with it right up front with my witnesses. Of course, Mr. Redden got to cross him on that. Well, doctor, isn't it possible that these missing pills might have made their way in and contributed to the death? So now, the whole case, it's in play now. Then remarkably, after the case is, and all the proofs are closed, and actually defendants had tendered a contributory negligence instruction after that, and refused the sole proximate cause instruction, at that point then, defendants, after the close of all the evidence says, remarkably, you know, judge, we can't meet our burden on contributory negligence. So you know what? We want to withdraw it. We don't need it. We don't want it. Well, of course they don't want it, because they haven't been able to prove it. The judge refused to strike my request, or refused to grant my request, that the contributory negligence evidence be thrown out, or at least, and also refused my request for a limiting instruction, which I tendered, which I believe accurately stated the law, that the court found, by throwing out the contributory negligence affirmative defense, or at least allowing them to withdraw it, the court, in the instruction read, the court finds that missing pills and abuse or misuse of the medication is no longer an issue in the case, and you should disregard it during your deliberations. That was an accurate statement of the procedural history of the case at that point. The judge refused it, refused my request for a mistrial. Again, the procedural history, your honors, is very, very important, because the complaint was filed in 08. They knew about the missing pills, 09. Certainly had opinions on the pills, and the cause of death being the pills in 2012. And yet they're allowed in 2011, and then they don't even file it till after, literally after the jury's picked. It's patently unfair. It's procedural gamesmanship that was forcing me to jump through hoops as the theories were shifting. I have to go first. I have to confront that contributory negligence. I thought I did a good job of it. I was prepared to argue the case on contributory negligence, and ask the jury, as they're required to do, to compare the relative fault of the defendants to the relative fault of the plaintiff. And they could listen to that. We'd be properly instructed also that it was the defendant that had the burden of proof on contributory negligence. So thus, then, I have to prove the negative. I have to prove that he wasn't an abuser, and that these missing pills, which should have never come in, weren't a cause of death. So the burden was shifted to me. The missing pill evidence in the abuse and misuse is analogous to the alcohol cases, which I cited in my brief. Certainly, when courts look at evidence of alcohol, be it an auto case or any other case, they have to weigh the prejudicial effect versus the probative value. In this case, without their expert, it had no probative value. They just wanted to dangle out there, ladies and gentlemen, there's some missing pills out there, wink, wink. Gee, I wonder what happened to the missing pills. You know, when you take too many pills, bad things happen. Nobody linked those missing pills to the cause of death. It's like throwing out, well, the plaintiff had a couple open beers in the back of his car. Gee, we don't have an expert who's going to link those beers to the plaintiff or to his cause of death. But you should know, because it goes to the plaintiff's conduct. Well, if true, then the conduct of the plaintiff should have been compared to the conduct of the defendant. And the jury would be allowed, with proper instructions, to be able to compare the relative fault. They weren't allowed to. I have a question. When they amended the pleadings, was that before the jury selection began? They made an oral request not supported by motion, as literally, Your Honor, we would. But the formal pleading was not filed till after the jury was picked. The motion was made before that. The oral motion was made before the jury. The motion was allowed before that. And it was allowed before. Did you request a continuance? I did not request a continuance, frankly. I had two out-of-state experts coming in at some expense. It was all scheduled. It had been continued once before because of Mr. Redden's injury. You've answered my question. Thank you. Are you appealing the issue of the failure to grant the misdrive? Yes. That, ultimately, in order to protect the record after I had done everything which I believe I could do, in terms of making appropriate objections, is that, at that point, Your Honor, if you're going to allow them to withdraw the contributory negligence and not give them the instruction, which, by the way, the trial court said, well, I'm not going to give them the instruction, but you can argue about the issues and not issues, I had no choice but to move for a mistrial. So I did ask for that and was denied. But, again, is that an issue in this appeal? Yes. Denial of a mistrial. Yes. Then I need to study your brief. OK. Again, the granting of the, after it started trial, amendment of contributory negligence was predicated on a commitment. And the court used that word on more than a few occasions of calling Dr. Coffman. I anticipated Dr. Coffman was coming. And, frankly, I was looking forward to the cross-examination because Dr. Coffman opined that, yes, Mr. McDermott, although he had no history of drug abuse, was a drug abuser, and that because of all these missing pills, the presumption is he must have eaten them, and that's why he died. And I was going to look at Dr. Coffman and ask him on cross-examination, well, isn't that inconsistent with the fact that there were other missing pills that weren't in the body? How do you reconcile that? In his deposition, he said, well, that's an inconsistency. So it was one of those strategic, I granted, decisions on my part. Maybe in retrospect, I should have moved to strike Dr. Coffman altogether. But I was actually looking forward to it. And once the court allowed the contributory negligence issue to be in play, I really had no choice but to address it. And I did address it. I thought I addressed it as best I could. But the table had tilted. The playing field had tilted. So it tilted so much in favor that now I'm trying to backtrack while I'm jumping through these. First, there's no affirmative defense. Then there's a defense, but it's not an affirmative defense. Then it's sole proximate cause defense. The court said, no, there's no sole proximate cause. OK, fine, we'll do the contrib. Put on four or five days of argument and testimony. Now we get to withdraw it. Now you see it. Now you don't. The jury's heard it. The bell's been rung. OK, judge, I object to that. I want the contributory negligence because that's what the jury's heard. At least give the looming instruction. The court refused and then refused my request for the mistrial. Thus, the defendants had the burden. Excuse me, without any burden, the defendants had the benefit of repeatedly ringing that bell with this prejudicial evidence that should have never come in in the first place, without any attempt by the court to lessen the prejudice by giving the looming instruction. Thus, they accomplished indirectly what they couldn't do directly. And that was showing that Mr. McDermott, without any supporting competent testimony to a reasonable degree of medical certainty, was a drug abuser. And that these missing pills that no one linked as the cause of death must have been in it. They threw it out there, hoping that the jury would bite on it, which I believe they did. This is dangerous precedent to allow this type of amendment and this type of practical and procedural gamesmanship. And I respectfully request that this court vacate the verdict and remand the case for new trial. Thank you very much for your time and attention. May it please the court. I'm Scott Howey. I represent the defendants' apoes in this matter, Dr. Samir Sharma and the Pain and Spine Institute. The affirmative defense of contributory negligence was never put to the jury. It did not affect the admissibility of any of the evidence the jury heard. And it did not come as any surprise to the plaintiff. Not only was the trial court within its discretion to enable the defendants to file it, but since they withdrew it, it had no impact on the trial and certainly no prejudice to the plaintiff. It is no reason to disturb the jury's verdict. And for that reason, the jury's verdict and the judgment on it should be affirmed. While the defendants' trial attorneys did consider an argument based upon contributory negligence, arguing that the decedent had been contributorily negligent in his own death, and even filed an affirmative defense at the outset of the trial to that effect, they ultimately elected to pursue a more conservative strategy, elected to pursue the lesser defense of simply challenging the plaintiff's case. And they did so on two elements of that case, both standard of care and causation, maintaining first that Dr. Sharma did not breach the standard of care in any of his actions, and second, that his actions were not the proximate cause of the decedent's death. And there was ample evidence to support both arguments, and the plaintiff doesn't object to the evidence concerning standard of care or whether Dr. Sharma's actions were a breach of that standard. And with a general verdict, that fact alone, the fact that there is no objection to the evidence pertaining to the standard of care, is enough for this court to affirm. But the plaintiff focuses on the evidence that the decedent's death was proximately caused by his use of pain medications in amounts greater than Dr. Sharma prescribed. And that is what the plaintiff has described here in court today as the missing pills evidence. And we can call it that, certainly, because that is what the evidence was. It was evidence that the decedent had been prescribed certain amounts of pain medication to control his pain, and based upon what he had been prescribed and the prescriptions he had filled, there were certain amounts of those medications that should have still been in his possession at the time of his death. There were pills missing from that that couldn't be found, and so that was deemed circumstantial evidence that he had taken more of his medication than he had been prescribed. And that was what the defense put forth as the proximate cause of his death, an alternate proximate cause, even if Dr. Sharma's prescriptions had been excessive. Now, certainly, this same evidence would have been relevant to an affirmative defense of contributory negligence. But that's not what's at issue in this case. The same evidence was equally relevant to the defendant's attack on the plaintiff's element of proximate cause. It was equally relevant to the argument that Dr. Sharma's actions were not the proximate cause of the decedent's death. And the withdrawal of the contributory negligence defense didn't deprive the evidence of any of that relevance. What's at issue here is whether the missing pill evidence was relevant and admissible for the purpose of challenging the plaintiff's case as to proximate cause. And the examination of that question is enormously hindered by the state of the record and the fact that there is no report of proceedings. Mr. Cech has said this morning that we are missing some of the specific testimony. It's more accurate to say that the record contains none of the evidence at all. All that it contains are some of the pretrial proceedings, some of the discussions in camera with the trial judge and the defense attorneys and Mr. Cech himself. There's descriptions of what evidence was expected to be admitted. The report of proceedings consists solely of the defense counsel's opening statement and closing argument in which he described evidence he expected to be admitted and described evidence that had been admitted. But none of the evidence itself is there. All that we have is the general description of what evidence was anticipated and what evidence had been admitted. And it's not enough to substitute the actual report of proceedings and the actual evidence with Mr. Cech's description of wink-wink, nudge-nudge, what might have been there. It's hard to imagine any evidence that would have been relevant only to contributory negligence and not also to proximate cause such that it might have become irrelevant once the contributory negligence defense was withdrawn. But if there was any such evidence, the plaintiff hasn't identified it, can't cite it, and there's no record even for this court to examine to try to find it if it were so inclined. And the plaintiff depends on the contention that there was what Mr. Cech calls evidence of contributory negligence. But what there was was evidence, as has been described, evidence regarding causation, possibly relevant to an affirmative defense, and the defense did consider bringing that to the jury and even did file the affirmative defense. It certainly would have been relevant to that had they elected to pursue that and put it before the jury, but it was no less relevant to the elemental question of what was the cause of the decedent's death. The circumstantial evidence that he had taken more of the medication than he had been prescribed was admissible for the purpose of causation, and it was properly admitted for that purpose. This is not an issue that's unique to contributory negligence, and whether the decedent's conduct was negligent or not is beside the point. Whether it was bad conduct is beside the point. Mr. Cech's suggestion this morning that the defense accused his client of being a... pardon me, the decedent, of being a drug abuser is simply nowhere to be found. It's not in the record. Partly it's not in the record because the record doesn't have most of the trial, but it's also not in those limited portions of the record that are there. The fact is that the trial judge limited the defense counsel to arguing only that more pills had been taken than were prescribed, and specifically barred defense counsel from saying anything to the effect that the decedent was a drug abuser or that he was trying to kill himself or that he was a bad actor in any sense of those words. It limited the evidence simply to the question of where the pills were and where they might have gone. And the record is that that was what... the defense counsel respected. In fact, Mr. Cech acknowledges in his brief that there was no statement by defense counsel to the effect that the decedent's conduct was negligent. And there's certainly no indication that it was characterized as bad or inappropriate in any way. The question of whether a plaintiff's activities are relevant to the question of causation has been answered by the Supreme Court in the Carando case, Carando v. Unarodo-Goodridge, which we've cited in our brief. That's a case, it was a products liability case, in which the Supreme Court recognized that even though there was no affirmative defense of contributory negligence, the plaintiff's actions were nonetheless relevant to the question of causation. And that principle governs this case as well. Whether they were negligent or not is beside the point. It no longer matters, because the affirmative defense was not put to the jury. It was ultimately withdrawn. The jury was never even made aware that contributory negligence had ever been an issue in the case. But despite that fact, the question of what the decedent had done with his medications was still relevant to the question of what had killed him. It was relevant to the question of causation. That's why it was admitted, that's why it was introduced,  were appropriate in that regard. I should note also there is considerable confusion and contradiction in the plaintiff's argument as to what role contributory negligence should have played in this case. Mr. Chackie insists that the defendants should not have been allowed to file the affirmative defense in the first place. At the same time, though, he also argues that the defendants should not have been permitted to withdraw the affirmative defense and not put it to the jury. And these arguments are contradictory. In effect, they waive each other. But even on their merits, they concern matters that are uniquely within the trial court's discretion. And they are largely based, particularly with regard to the amendment of pleadings, on the question of prejudice and the manner in which the plaintiff was prejudiced. There is no... nothing in the record to suggest any sort of prejudice that would make it an abuse of the court's discretion to permit either the filing of the affirmative defense or the withdrawal of the affirmative defense of contributory negligence. And it's important to recognize also that in withdrawing the affirmative defense, the defendants took a risk. The affirmative defense of contributory negligence would have been a hedge against an adverse verdict. It would have been a way for the jury, in effect, to split the baby and to find against the defendants, albeit in a lesser amount. And the defendants chose to forfeit that defense. That's within their prerogative. And they gave that up. They gave up the hedge against the bad verdict. But in any case, if the plaintiff is correct that the defendants didn't have the evidence sufficient to support the affirmative defense of contributory negligence, then it would have been an error to put it to the jury. And it certainly can't be an error for the defendants to have withdrawn it, especially if the plaintiff is insisting that the defendants should not have been permitted to file it in the first place. It's also important to recognize, Your Honors, that we are talking... All that we have talked about this morning and all that Mr. Check has talked about, all concerns the question of proximate cause. The evidence that's at issue concerns contributory negligence and what the cause of the plaintiff's death was. It concerns approximate causation, again, the cause of the plaintiff's death. All of that is relevant to one element of the plaintiff's case. But this was a general verdict. All we have is the jury's verdict returning a verdict in favor of the defendants. And we don't know, we can't know, because there were no special interrogatories, what the basis of that verdict was. What's referred to in Illinois law as the two-issue rule, or in some cases the general verdict rule, tells us that  even if Mr. Check is absolutely correct in all of his allegations of error, all of his allegations of error pertain to something that may very well have been harmless error. It has to be regarded as harmless error under the two-issue rule, because for all we know, the jury's general verdict was based upon its conclusion that Dr. Sharma did not breach the standard of care. It may never have reached the question of causation. That's the principle that we take from the First District's decisions in Tabe v. Osmond and in Orso v. Orso v. Shevchik, if I'm pronouncing that correctly. Both cases in which the court held that allegations of error that pertained to only one of more than one claims or causes of action could not be regarded as reversible error, because there was no way to know with a general verdict if those errors, if indeed they were errors, if they had any impact on the jury's verdict. In Tabe in particular, that's a case involving an error in jury instructions that concerned proximate cause. And the court concluded that even if there had been an error in those jury instructions, it didn't matter to the general verdict, because with the general verdict, the court couldn't tell what the basis for the jury's decision had been. And the general verdict indicated, or was an indication in its very nature, that the jury could very well have concluded that there was no breach of the standard of care. Orso is similar. It concerned alleged errors regarding contributory negligence, as in this case. But in that case as well, the court concluded that the jury might never have reached that issue, because it also could have concluded that there was no finding of liability in the first place. So too in this case. Faced with a general verdict, this court has to presume that the jury reached a conclusion in favor of the defendants on every element that was put to it. One of those elements was the question of whether Dr. Sharma breached the standard of care. That's an element that the plaintiff had to establish. It was a disputed element. There was, again, we're hampered by the state of the record, but there is discussion of evidence in the record concerning... Thank you. There is discussion of evidence in the record concerning expert testimony that Dr. Sharma did not breach the standard of care. Again, the plaintiff does not contest that. There is, in fact, no argument put forth by the plaintiff that there was any error that had any impact on the question of standard of care and whether Dr. Sharma breached it. Under the two-issue rule, that situation calls for this court to affirm simply on the basis that even the errors that Mr. Cech has vigorously argued do not amount to reversible error if they cannot be traced back to something that the jury actually found. I would be happy to address any further questions that the court might have, but the plaintiff has shown no error, let alone any prejudice, in the addition of evidence concerning the missing pills or in the filing or subsequent withdrawal of the contributory negligence affirmative defense. She offers no reason to disturb the jury's verdict, and for those reasons, the judgment on that verdict should be affirmed. The general verdict rule, Your Honors, has never been the basis to affirm a verdict in case where a party such as this, the defendant, abused procedural rules to present highly prejudicial evidence. This case involved a single count and no affirmative defense, and thus is factually distinguishable from the TAVE and the other cases cited by defendants. And what is that highly prejudicial evidence? What can we look at in the record? Again, as far as the record goes, the TAVE is sufficient in that we've outlined throughout that my description of the evidence that went in was never objected to. I described it in detail. It was described during pretrial motions and post-trial motions and in post-trial argument. The defendants acknowledged the extent of the missing pill evidence in their post-trial pleading. Again, I had filed a motion with this Court and said to the extent that there's some incompleteness there or a specific testimony that need be, frankly, I didn't think it was an issue. I don't even think counsel's even saying it's an issue. They're just saying, yeah, there was all this evidence, but it was conduct evidence. It wasn't contributory negligence issues. Defendant's statement of facts does not contest my statement of facts concerning the extent to which the missing pill evidence was presented to jury. If my statement of facts was inaccurate or unfair, they should have disputed the same as required by Supreme Court Rule 341. Otherwise, my statement of facts should be taken as true. Again, to the extent there's any doubt, the record can easily be supplemented, and I'd be permitted to supplement the record so it accurately disposes anything that might be missing from the trial court. Again, I do not believe it's an issue. I don't think it's an issue here. It's just semantics. Counsel's calling it conduct evidence. I'm calling it contributory negligence evidence. They have an affirmative duty to acknowledge it, and I believe they do acknowledge it, but they're just calling it something different. This was not a proximate cause case. This was a case where defendants by some means, one or another, were going to get before this jury this notion that all these missing pills is why he died. They were going to get that. Really what they're saying is, it goes to proximate cause. No, as the trial court pointed out, and denied them continually, this is not proximate cause evidence. This is not sole proximate cause. This goes to the conduct of the decedent, and you're comparing it to the conduct of the defendant. That's why the court, I believe, even abusing the discretion, at the end said, fine, I think this should have been pled a long time ago. You go ahead and plead this contributory negligence. That was the predicate by which they got all this evidence in, because the court had said, I'm going to strike it. Contributory negligence had already been barred under Motion to Eliminate. I'm going to strike it unless there's a commitment that you're going to bring an expert in and link those missing pills and this theory of drug abuse to his death. That was the predicate. Here's the predicate. Judge will file it. Now it's opened the door. Now it's an issue. Now it's confronted. Now it's dealt with during evidence and argument. And now, you know what? We don't need it. We don't want it. We want to take it away. Well, yeah, I object it. Judge, the jury just heard four to five days of evidence and argument about contributory negligence. I want that contributory negligence. I want the jury to be able to compare it. I want the jury to know that they have the burden of proof, not me. I don't have to disprove their theory. They have to prove it to a reasonable degree of medical certainty, more likely true than not true. And they didn't. They didn't want it. So I get to argue it without an instruction, letting the jury know, ladies and gentlemen, all that stuff about missing pills and abuse and misuse is no longer an issue. So I tried. I tried the best I could in closing. But the bell had been rung. There was no attempt to cure that bell ringing multiple times. I rang it as I pointed out in my brief a thousand times during my case in chief. Doctor, what about this? What about this contributor? What about these missing pills? What about, was he an abuser? Was he a misuser? So all this is dangling in front of the jury and the jury has to speculate about the cause of death without their commitment to call their expert. They want to talk about it. Well, it's really conduct. It's not negligent conduct. Bad decisions or whatever. And it's there in the record. We talked about it, and again, respectfully, and I apologize, but I did not really believe that was even an issue, given what had gone on pre-trial and post-trial. If this court deems it necessary, and I apologize to counsel, I can fairly quickly and I've offered this before to stipulate, I can fairly quickly provide this court with the testimony of these witnesses where all this missing pill evidence and the abuse and misuse issue was presented to them. And I think I should have an opportunity to do it to the extent that it's not clear or the court doesn't take their lack of protest or lack of objection on its face. So again, respectfully, I believe that the court abused its discretion on several different counts, and that I believe that a new trial is wanted and I would again ask that the court vacate the jury's jury's court and allow Ms. McDermott an opportunity to have this case tried fairly to another jury. Thank you. Thank you, counsel. Thank you, counsel, for your arguments. The court will take this case under advisement and render a decision with dispatch, and at this point we'll take a break and a recess for a new panel change.